All rise. The judges of the United States Court of Appeals for the Ninth Circuit, hear ye, hear ye, all persons having business with the Honorable United States Court of Appeals for the Ninth Circuit, now draw near, give your attention, and you will be heard. God save the United States and this Honorable Court. Please be seated. Good morning, everyone, and welcome to the Ninth Circuit. We have one case this morning that is submitted on the briefs, and that's 22-16017, Loretta Taylor v. Hiromichi Kobayashi. In accordance with the order previously entered on the docket of that case, that case is hereby submitted on the briefs. We then have three cases for argument on calendar this morning, and we'll now hear argument in the first case, 22-15288, Preston Lee v. L3Harris Technologies, and we'll hear first from Mr. Rosenbaum. Yes. You may proceed. Good morning, judges of the Ninth Circuit panel. Joseph Rosenbaum, on behalf of Appellant Plaintiff Preston Lee, who is also present in the court, a Native Hawaiian man who is also a veteran of the United States Armed Services. May it please the court. I'm going to focus on the issue that I believe is central to this case, which is whether or not there is a genuine dispute of fact as to pretext. Mr. Preston Lee had been working at L3Harris for 26 years. He had PTSD the entire time. The timeline event shows that issues started with his work after it was brought to light that he was diagnosed with post-traumatic stress disorder. In March of 2019, he was called into HR, and they gave him a plethora of questions regarding his PTSD that showed that they thought his PTSD could result in violent actions in the workplace. In his 26 years, there was never any violence in the workplace by Mr. Lee. Suppose the facts are, and I'm just trying to take a hypothetical, suppose the facts are that a person has PTSD, and his PTSD causes him to have great difficulty in the workplace getting along. He's constantly exploding at people, getting upset with them, creating disruption and disharmony within the office, and then they decide to terminate him because of all that sort of behavior resulting. Is that, in your view, impermissible? No, if there was actually a history of such conduct. Isn't that a question of fact? Shouldn't that be tried by a jury? Yes, that's really what we're here for. Is it the facts in this case? They must be tried by a jury. It's unbelievable to me that the district court ruled in the fashion they ruled. The fact of the matter is, on the date of the incident, which I'm sure the panel is well aware of, the date of the incident, Mr. Lee went to his lead, who is not a supervisor, but his lead on the job site, and did not go in there and erupt in his office. The district court said that there was not a showing of pretext by comparison with Mr. Igni's conduct, who is the lead, because Mr. Lee initiated the conversation. There's nothing in the record to show that initiating that conversation was anything more than, hey, if I've got to wear my safety gear, you've got to wear your safety gear. Then Mr. Igni says, or what? And Mr. Lee says, well, then I'm going to turn you in. At that point, Igni explodes. Going back to the hypothetical I had, what would be – you said that that would not be a violation, but on account of what element would that be true? Would it be because that person would not have the necessary qualifications to perform the job, or would it be that the termination was not pretextual? I would say that the person could not – based on the case law of the Ninth Circuit, I think it's clear that if you are so disruptive and threatening and violent in the workplace, then you wouldn't qualify as being a qualified individual to perform the essential job duties in the workplace. I also think that if that was the case, then the employer would have a justification for the termination. Did they have any incident other than the November 2019 incident with Inga? Was there any other particular incident that the company pointed to as grounds for the termination and showing his disruption in the workplace? Not in the workplace. They hired a psychologist to interview Mr. Preston Lee in regard to his work comp claim. And so some of the things that allegedly – and those are disputed facts also – that Mr. Preston Lee said regarding his frustrations that are in his mind. When I'm sitting at home drinking, I'm frustrated, I'm upset. But he's able to control himself in the workplace for 26 years working for this federal contractor. So the facts in this case are clearly disputed as to whether or not he committed any acts within the workplace that would give rise to a justification for his termination. Now, there was an incident with Mr. Igni previously, and that's briefed. The incident with Mr. Igni previously is where Mr. Igni alleges the same things that he alleged that gave rise to Mr. Lee being suspended and out of work up until his termination, which was Preston Lee approached him angry, fist clenched, chest popped out. The same exact story. And that was proven to be totally false by David Hassapani. If I can interrupt, going to the pretextual element, what's the evidence that the employer here didn't truly believe that Mr. Lee's conduct was worse than Mr. Igni's? Because they didn't even ask him. They didn't even look into it. They asked the witnesses that were actually there. When they signed their statements, the statements were identical, drafted by the managers. It was a setup. All of the witness statements were refuted. When they were deposed, they recanted all of them and said they couldn't even hear and that Igni was yelling first and that Preston was yelling back. So it's like equal conduct in the workplace. So when you look at what the employer actually genuinely believed, my argument is that they didn't even look to the conduct of Igni. They didn't even ask these witnesses. It's in the record. They didn't ask the witnesses what did Igni do. They only focused on Preston Lee because they believed that he was a threat based on his PTSD, although he had this condition the entire time he was employed. So if you look at the actual facts in this case, the employer can hide behind we had a genuine belief at the time. I think the facts in this case dispute that because it shows that they didn't have a genuine belief. What they had was their belief that Preston was a threat and they collected evidence to prove the same. It was totally controverted by these same witnesses at deposition. The real conflict that I have here is also that the district court didn't even look at the fact that these statements that were allegedly the initial basis for their determination were essentially fabricated by the management. The district court doesn't even mention this. The other glaring issue, as I already said, was that the district court alleges that Preston started it. Well, Preston, he initiated a conversation. Mr. Igni initiated the yelling. Mr. Igni initiated the cursing. And who ended the conversation? Mr. Preston Lee said, this is getting out of hand, and he walked out. Now, this whole set of facts has to be taken in the context of this workplace. This workplace at Barking Sands is a military installation on the island of Kauai. It's filled with former veterans. It's filled with blue-collar workers. It's a place where people curse all the time. It's a place where people yell all the time. And this was submitted by Mr. Lee. This was submitted by David Hasepene. This was submitted by Gilbert Castro. The fact of the matter is they try to make it as if Mr. Lee was a disruption to the workplace when he didn't start it. But moreover, this sort of conduct was commonplace. So the court has to look at this in the context of the workplace. Now, if we're talking about a library, we're looking at something different. But we're talking about blue-collar painters in the workplace that constantly call each other the F word, you fuck this, that, and the other. It's kind of like a boy's workplace in a large way. Mr. Rosenbaum, you also had a retaliation claim. Would you address that? Yes. The retaliation claim, the district court looked at the retaliation. You're talking about the ADA retaliation, correct? Because we have a whistleblower retaliation also. You're talking about the ADA? Yes. Okay. So the ADA retaliation claim, I would submit that we've met every element of the Prima Fascia case. The court said, no, Mr. Lee was terminated in January, and therefore he couldn't have had a retaliation claim because he submitted his papers to the Civil Rights Commission, to the EEOC thereafter. But the facts in this case are quite disputed in that regard because Mr. Lee was not terminated in January. They're saying they made a decision to terminate him, but they did not. And, of course, in the case law, and the Ninth Circuit reflects this, is that the employer has all the information in an employment discrimination case. It's very difficult to even bring a case and prove it up because the employer holds all the cards and hides them. So for the employer to come in and say he was terminated in January, well, that's really not the fact. He was terminated after he filed his Hawaii Civil Rights slash EEOC charge. And so we meet every element of the Prima Fascia case, and coupled with the fact that I believe, without question, you can show pretext by comparison, let alone them calling into the office asking about his PTSD, let alone the fact that Igni is a proven liar, that he made the same claims against him previously, that Igni, in fact, had stolen the gas that shows he's a liar from the federal government, and he resigned because of that. He's no longer working at L3Harris because what Mr. Lee had complained about regarding the theft of the gasoline was 100% true. Is it your position that having lied once, Igni should not be believed, and therefore there was not a good faith basis for the employer's action? Yes, they should have taken it into consideration. No matter how long ago that lie was? It wasn't that long ago, one. But two, I'm not necessarily saying that somebody said something 20 years ago. You should be like, oh, he made one fib, but when you look at the actual facts, he's alleging the same thing. It's his M.O. Preston came up to me, his chest was popped out, his fists were clenched, and he's foaming at the mouth essentially, right? He's so angry. But that was proven to be a total lie by a precipient witness. The man, David Husapeni, that was there the first time when this was all fabricated, said to the employer that wasn't true. And guess what? There's no write-ups because of it. There's nothing in Preston Lee's record besides this one incident that shows that he's in any way a threat or disruptive to the workplace or that he violated policy. If he violated policy, Igni violated policy. If he was disruptive to the workplace, Igni was disruptive to the workplace. Igni does not have PTSD. He was not written up. These laws are put in place to protect people with disabilities. We have so many people in our community that have PTSD that have to hide it because of issues like this, because they're looked at in a negative light. That's what occurred here. How many police officers do I know? How many people that work in security do I know that hide their diagnosis because they're afraid of retaliation and the sort of conduct that Alfre Harris' management went through? Now, if there was a justified reason for his termination, that he physically assaulted somebody, that he was threatening bodily harm against somebody, there's no facts like that in this record. The only facts there are is that there was a yelling match, and the disputed fact is who started the yelling match. The practical reality is Preston has submitted testimony that Igni was the one that started cursing. Igni was the one that started yelling. The other witnesses were in a totally different room, and as I stated, they recanted completely because – and why did they sign the statements initially? To save some time for rebuttal? Yes. They signed the statements initially because why? I quote, the managers told us to. I'll save my time. Thank you. All right. We'll hear now from Ms. Jones. Good morning. Amanda Jones. I have the privilege of representing Apelli L. 3 Harris Technologies, Inc. The district court's decision granting our motion for summary judgment should be affirmed both for the reasons set forth in the district court's order, but also for two additional reasons that are supported by the record in this matter. First, with respect to what the court decided, the district court correctly concluded that Mr. Lee failed to meet his burden of establishing pretext with respect to the legitimate, non-discriminatory reasons articulated by L. 3 Harris for the decision to terminate his employment. The court can also affirm for two – Whose reasons were? Sure. So initially there was the incident which – between Mr. Lee and Mr. Igni that was brought to management at PMRF on Kauai, and they addressed it. Subsequent to that, there were two issues that came up. First, Kiaki Technologies became aware of this complaint which they investigated concerning the allegation by Mr. Lee that Mr. Igni was stealing gas. During the course of the investigation, there were interviews of various staff, and again this was conducted by Kiaki Technologies, and the staff members who worked with Mr. Lee raised concerns about his conduct in the workplace. And Kiaki reported that to L. 3 Harris and said, we really think you need to elevate those concerns and look at this issue because it's creating problems and disruption in the workplace. In their memo or email communication about elevating the concerns, they specifically mentioned as one of the concerns is PTSD. There was a reference in the email to PTSD, yes. At that point, this was December of 2019, and that was in an email by an employee of Kiaki Technologies, and as Mr. Lee's counsel referenced, the employer had notice of his PTSD back from March, at least March of 2019. So that wasn't new information that was being revealed. In one incident with Inga in November, you have these comments passed along by the other company. What else did the company have as the basis for the determination? Sure. So after Kiaki asked that L. 3 Harris elevate the concerns, separately the union that represents Mr. Lee and his coworkers came forward to L. 3 Harris with statements signed by some of his employees expressing concern about the workplace and asking L. 3 Harris to do something about it. So at that point, the corporate office. Concerns about it, what specific behaviors by Mr. Lee covered by that third category you're referring to? Sure. Angry, aggressive behavior, creating a hostile work environment. It's one of the statements was by Mr. Castro, and that's at ER 444. But and I can pull it up. He stated that Preston's aggressive and hostile behavior is unprofessional, threatening, and it adversely affects my ability to work. It creates a hostile work environment. I feel uncomfortable working with him and at times have been concerned about my personal safety. And he believed that his aggressive and hostile behavior created an unsafe and hostile work environment. Help me on this. I'm having difficulty understanding your point. If the disruptive behavior is the product of the disability of the PTSD. Isn't the issue then not pretext, but whether the disruptive behavior makes Mr. Lee an unqualified employee? I think there's a factual and a legal answer that I'd like to provide. First of all, I want to say is a factual matter. There's no evidence that the conduct that Mr. Lee displayed was a product of his disability. He's never said that, and he's never put anything in the record that would support that. Instead, what he has said. It seems clear that the company believed that, that a reasonable jury could believe that the company believed that. You're asking a lot of questions about his PTSD. It comes up in the communications from the other company. It's clearly a factor. Is the PTSD leading to behavior that is disruptive? He hasn't put anything in the record. And on the qualification issue, which is one of the elements of the prima facie case, Mr. Lee has the burden of proof of establishing that he's qualified. So I think there's two. To go to the legal question, I think, Judge Bea, you're raising the issue of the Humphrey case, the Ninth Circuit's Humphrey decision, where it did address the issue of qualification and whether or not you can meet the qualification standards. You say that there's no evidence that the conduct was caused by PTSD. No declarations by Mr. Lee or by any expert witness that the conduct can be attributed to PTSD by a rational trier of fact? Mr. Lee didn't say that. In his declaration that he submitted in support of his opposition to the motion for summary judgment, he said, similar to what you heard from his counsel this morning, that, well, no, Mr. Igni started it, or, no, everybody swears. It's not a big deal. So there wasn't a statement connecting any of that specific conduct, which created concern for his coworkers, that any of that was connected to his PTSD. And he had the burden of establishing that he was qualified. And further, the court's decision in Mayo, this court's decision in Mayo versus PCC Structurals, recognized that if you're creating a disruption and causing other people to feel unsafe through violent actions, which this was, that you're not qualified. What was the violent action in the record? There was angry, aggressive conduct, profanity-laced outbursts that, if you look at the statements by Where is profanity? You said violent conduct. Where is there violent conduct by Mr. Lee in the record? The angry and the aggressive conduct, and then the next day, a threat. Just the fact. Tell the behaviors. Don't give me adjectives. What behaviors? Well, the following day, after the incident, there was a specific threat that Mr. Lee made, where he said that he was going to punch Mr. Igney through his face. And we're here on summary judgment. He says that he said something different from what the other witness referred to. There's a difference in nuance. Well, he actually didn't deny it. In his deposition, he said he might have said that. And the question with respect to pretext, if we're looking at the pretext analysis, the question is not whether or not the employer was correct, but whether or not there was an honest belief. And that was in Mr. Hezapeni's statement. And Mr. Lee's counsel makes a lot of argument about Mr. Hezapeni changing his story, but if you look at his deposition transcript, Mr. Hezapeni confirmed in his deposition that that was, in fact, exactly what he heard Mr. Lee say the day after this incident with Mr. Igney, that he wanted to punch, he was going to punch Mr. Igney through his face. Can you explain the time lag between the date of the incident, which I think was early November, and the company's decision to fire him in January? I understand that he was on medical leave shortly after that, but that seems to be a couple months. I mean, isn't that potential evidence of there's a pretext here? If this was such a serious incident, wouldn't the company have immediately dismissed him or made the decision to do so? So there was a disciplinary decision that was made in late November based on the incident, and that was made by the folks on Kauai and imposed. And then Mr. Lee went out on leave. And so the sequence of events, as reflected in the motion, was that in December is when Kiyaki Technologies asked L3Harris to elevate these concerns to the corporate level. And so that's when the people who were the ultimate decision makers at the corporate level, Danielle Stewart and John Kreider, then took a look at the issue. And then it was subsequent to that, shortly thereafter, that they received the statements from the union representing Mr. Lee and his coworkers expressing concern. And that is what led to the initial decision in January to terminate his employment based on these concerns that had been raised. And then, of course, that was postponed because Mr. Lee asked for an extension of his leave, and the company policy was they typically don't terminate people while they're on leave. So they held off and then decided again later. Mr. Lee says in his declaration, although PTSD does result in irritability and other negative emotions, why isn't that sufficient to make a tribal issue of fact that his disruptive behavior was caused by his disability? Because Mr. Lee should be stopped from making those statements because they directly contradict the statements that he made in his submissions when he was seeking disability benefits from the Department of Veterans Affairs. It might contradict him. It might lead, in prior fact, not to pay attention to what he's saying. But as a matter of summary judgment, isn't there a tribal issue of fact? No. PTSD caused the disruption? No, because he should not be allowed to make contradictory statements in court that contradict what he said to the Department of Veterans Affairs. Did you make a motion to strike his declaration on the basis that he wasn't competent to give this evidence? No, it's not a competency issue, Your Honor. But what we did raise in our motion for summary judgment is that he should be stopped from making statements that contradict what he submitted when he requested that the VA determine he was 100% disabled, which they did based on his statements. And he should be stopped because he stated what earlier? Thank you. Let me just pull them up so I can provide you an exact. So in the submissions to the Department of Veterans Affairs, he reported having a history of problems with coworkers, including having to see his boss for threatening a coworker. That was at Supplemental Excerpts of Record, page 230. He also reported having fights with coworkers on multiple occasions, resulting in reprimands. That's at Supplemental Excerpts of Record 239. How does that contradict his theory that PTSD causes him to be irritable? Well, it contradicts the statements that he was making in his declaration that he never had any threats. That's not what I'm going at. I heard you say that there was no evidence whatsoever that the disruptive behavior attributed to Mr. Lee was caused in whole or in part by his PTSD. Now, I just read you his own statement or oath that his PTSD causes him to be irritable. Does that create an issue of fact on the issue of causation of disruptive behavior by PTSD? No. What he said is that it can make him irritable, but that he was always able to keep things in check when he was at work. He never said that any of the conduct that he engaged in was a result of his PTSD. And I would further point back to the Department of Veterans Affairs records in which his submissions were that he had angry outbursts with little or no provocation, and there was occupational impairment specifically related to maintaining work relations and adapting to stressful situations at work. These are all statements that under the Supreme Court's decision in Cleveland, he has to come back and explain how these contradictory statements would support his burden of establishing he was qualified. Let me give you a hypothetical. Suppose that your employee has PTSD, and it's clear that the PTSD causes disruptive behavior, and the company says, well, we're getting all this disruptive behavior, and it's only going to get worse because, you know, he has really serious PTSD, and we just can't take it, so we're just going to fire him. In that circumstance, is that a non-discriminatory reason that would satisfy the non-protection? Because it seems related to the PTSD, so how is it non-discriminatory for purposes of assessing pretext? Well, I think if you... I see you have the issue about job qualifications, and maybe that's the right bucket to analyze that issue, but I'm having trouble seeing how it fits in the pretext, because the issue is not non-discriminatory in that. Right. Well, I think if the employer had a... The employer's burden is to establish a legitimate non-discriminatory reason. If they came forward with evidence of certain conduct that violated the rules, the question may be, you know, is there a business necessity? Is there a justification for those rules? And clearly, when it comes to serious conduct that is causing a disruption in the workplace, that you can. And so I think they would be able to establish that, and that wouldn't establish pretext, because it doesn't demonstrate anything about whether or not they honestly believed it, unless, of course, there was some subsequent or other information that suggested or that took into question the honest belief of the employer. Oftentimes, the question that comes up is more in the qualification. You know, this is raised in the qualification standard. And oftentimes, I think this somewhat gets into your question, but the issue is whether or not an accommodation has been requested prior to, you know, the conduct that has been engaged in. And we see that in a number of cases. Your time has expired, Sue. Thank you. Thank you, counsel. Mr. Rosenbaum, let me ask you a question. Yes. Where is the evidence that PTSD caused any part of the disruptive behavior? The evidence is within the employer's documents. The employer, one, in the email, they reflected he has PTSD. Two, in the questioning they conducted with Mr. Lee. Say that again. The questioning they conducted with Mr. Lee prior to his termination going through, are you a threat in the workplace? Let me ask you this. Yes. You didn't file a declaration of an expert witness saying that this PTSD causes this man to engage in disruptive behavior, true? True. Okay. But if you look at their doctor, their doctor's statements that they rely upon clearly indicate that a reasonable trier of fact could say that the reason why he has outbursts, the reason why he has irritability, the reason why he has emotional issues, is because of his PTSD. There's no other reason. That is his diagnosis, which the employer was, without question, undeniably aware of at the time of his termination. I think the court correctly hones in on the realities of the qualification prong. The employer believed that he was disruptive to the workplace caused by his PTSD. The employer believed he violated the policy regarding the issues with Mr. Aikne in the office, a result of his PTSD. All of the rationales for their termination stem from his disability. Moreover, I want to address Kayaki Technologies when they said there's a shifting rationale here. If you look at the facts, it's not only disruption of the workplace. It's not only violating policy. First, Kayaki said we need an assurance, a guarantee that Mr. Lee will not be a threat to the workplace or we can't have him back here. They didn't go to his doctor. They didn't even go to Mr. Lee to ask can you provide some assurances from a medical professional that this is not going to boil over. Can you personally provide any of those assurances? They did none of that. It shows pretext, let alone it shows that they weren't truly interested in getting him back to the workplace. They were interested in removing him from the workplace based on their presumptions about what PTSD could do in the workplace regarding his conduct. But again, if you look at the 26 years of his employment, there's nothing. There's no record. There's no employment record. There's nothing that the employer provided to show that, look, he had all of these issues. He was written up for this, that, and the other. It's zero. Talking about Gilbert Castro's statement, she goes through all of, you know, he created a hostile work environment. These are all generalities. It's like saying he harassed me. What does it mean? That was conjured up. Those statements weren't written by Mr. Castro, and as I stated during his deposition, he 1,000% recanted and said that Mr. Lee was not a threat to him, that Mr. Lee did not create a hostile work environment. Hesapene, regarding the punch through the face comment, Hesapene said that he didn't. Preston was just joking around. If my employer was being rude to me and I said I want to choke him, I just want to choke that guy. I mean people in the workplace are going to say things to their coworkers like they're upset. If Preston wanted to punch Igni through the face, he had every opportunity to do it. He controlled himself. Your time has expired. Thank you. Enjoy yourself in Hawaii. The case just argued to be submitted.
judges: BEA, COLLINS, LEE